# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| AT&T CORP., | CASE NO. 08cv0758 JM(AJB) |
|---|---|
| Plaintiff, | ORDER DENYING MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| WASHINGTON INVENTORY SERVICE, | |
| Defendant. | |

Washington Inventory Service ("WIS") moves for summary judgment or, alternatively, for partial summary judgment on both claims asserted in AT&T's complaint. AT&T opposes the motion. Pursuant to Local Rule 7.1(d)(1), this matter is appropriate for decision without oral argument. For the reasons set forth below, the court denies the motion for summary judgment or, alternatively, for partial summary judgment.

## BACKGROUND

On April 28, 2008 AT&T commenced this diversity action alleging two claims for breach of contract and quantum meruit/unjust enrichment. AT&T is in the business of providing telecommunications services. WIS is a San Diego-based company that provides inventory counting and related services to retailers across the country. WIS maintains over 140 offices in the United States, including about 104 offices outside the state of California.

At the heart of the parties dispute is a $360,000 minimum annual revenue commitment ("MARC") provision contained in the parties' September 3, 2003 contract documents. (WIS Exh. 6). The Voice Data Services Attachment to the contract containing the MARC provided that WIS could fulfill its obligation by purchasing any combination of AT&T's Business Network Services including, long distance, toll free, advanced features, international, calling cards, local, corporate office, voice access, frame relay, ATM, teleconferencing and managed internet services. Id. Over the three year term of the contract, WIS did not satisfy the MARC.

In the 12 month period from June 2002 through May 2003 WIS spent $614,795 on telecommunications services provided by AT&T, (SoF ¶3). In an effort to reduce its telecommunications costs, in 2003 WIS decided to issue a Request for Proposal ("RFP") from various suppliers of telecommunications services. In its response to the RFP, AT&T indicated that it could provide services to "128 of 142 or 90%" of WIS's offices. (WIS Exh. 2, p. 7). Subsequently, AT&T account manager Julie Rossi informed WIS Network Operations Manager Steve Stevenson that AT&T could provide coverage to 70% of the WID offices. (Stevenson Decl. ¶12). Mr. Stevenson concluded that the provision of 70% of WIS offices outside of California with local services would satisfy the MARC. (Stevenson Decl. ¶13). On June 4, 2003 AT&T provided WIS with a spreadsheet applying its rate to about 59% of WIS offices located outside of California showing a net local spend amount of $8,335.80. Mr. Stevenson represents that he did not consider the 59% coverage rate because there was no text indicating that AT&T was withdrawing its 90% coverage representation in the RFP. In analyzing the RFPs, WIS retained a telecommunications consultant, Gary Eckert of Profitline, to assist with the analysis and comparisons of the proposals.

Ultimately, WIS entered into agreements with SBC for the provision of all local, long distance, and DSL services in its California offices and with AT&T for the provision of all local, long distance, and DSL services in its offices located outside California. The contract documents consist of (1) the DSL Internet Service Order

Agreement; (2) the Local Services Order Agreement, and (3) the Voice/Data Services Service Order Agreement. These agreements were addenda to a Master Agreement executed by WIS and AT&T in June 2001. (WIS Exh. 7).

Soon after the effective date of the new agreements, "AT&T encountered problems provisioning some of WIS's field offices with local telecommunications services because of the prior technical configurations of WIS's service. AT&T was unable to provision local telecommunications services to WIS field offices where DSL service was connected to main telephone lines." (Rossi Decl. ¶19). Another limitation to achieving the switch over to AT&T's services resulted from the need to cancel the Centrex switching services and that certain services required WIS to place orders with incumbent providers and then to terminate the service in order to allow AT&T to take over the service from the incumbent provider rather than third parties. (WIS SoF. ¶10). As the first year anniversary date of the contract approached, on August 24, 2004 Mr. Stevenson informed AT&T that its lack of progress in converting the local offices to AT&T local services "was preventing WIS from making the $360,000 MARC." (Stevenson Decl. ¶19). On August 25, 2004 Mr. Sullivan, an AT&T account representative, responded by identifying the progress obtained in converting WIS offices to AT&T services. The spreadsheet indicated that only 33 of 87 offices had been converted. (Stevenson Decl. ¶¶23, 24). The reasons identified for the limited office coverage were identified as DSL on the main line, Centrex of split line service, and third party provisioning. (WIS SoF ¶20; AT&T SoF. 19).

On September 3, 2004 WIS provided AT&T with a default notice indicating that AT&T had failed to provide local telephone service to only about 30 of its field offices. (WIS Exh. 13). On September 15, 2004 Mr. Stevenson sent an email to Mr. Sullivan at AT&T indicating that local service had been provided to only 35 of 104 non-California WIS offices. (WIS Decl. Exh. 14). In response, AT&T waived the shortfall penalty for the first year of the MARC. (Stevenson Decl. ¶26). On September 16, 2004 WIS informed AT&T that it would allow it to provide local service to its offices located

1  in California. AT&T responded that it could not provide local services to these offices.
2  Id. ¶28.

3  In early 2005, the parties began discussions concerning renegotiating the MARC
4  pursuant to Section 7.0 of the Master Agreement. The parties reached a tentative
5  resolution to the dispute but, ultimately, new management at WIS did not agree to the
6  terms of the renegotiated contract. (Stevenson Decl. ¶32; AT&T SoF. ¶¶47-48). On
7  February 27, 2006 AT&T billed WIS for the second year (from September 3, 2004 -
8  September 2, 2005) MARC shortfall in the amount of $135,535.55. (Stevenson Decl.
9  ¶33; AT&T SoF. ¶48).

10  On May 16, 2006 WIS provided notice of default to AT&T, noting that it
11  considered the MARC shortfall charges improper because the charges were "directly
12  related to AT&T's inability to provide the promised services. Had AT&T been able to
13  deliver on promised services, there would be no short fall in our ability to meet our
14  contractual obligations. It is our position that AT&T knowingly and intentionally
15  misled WIS to cause WIS to enter into a contractual arrangement with promises that it
16  could not meet." (AT&T Exh. 17). On October 31, 2006 AT&T billed WIS
17  $251,801.78 for the third year MARC shortfall. (WIS SoF. ¶39). AT&T commenced
18  this action to recover the alleged revenue shortfalls for the second and third years of the
19  contract.

## DISCUSSION

**Legal Standards**

22  A motion for summary judgment shall be granted where "there is no genuine
23  issue as to any material fact and . . . the moving party is entitled to judgment as a matter
24  of law." FED. R. CIV. P. 56(c); Prison Legal News v. Lehman, 397 F.3d 692, 698 (9th
25  Cir. 2005). The moving party bears the initial burden of informing the court of the
26  basis for its motion and identifying those portions of the file which it believes
27  demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett,
28  477 U.S. 317, 323 (1986). There is "no express or implied requirement in Rule 56 that

1  the moving party support its motion with affidavits or other similar materials <u>negating</u>
2  the opponent's claim." <u>Id.</u> (emphasis in original).  The opposing party cannot rest on
3  the mere allegations or denials of a pleading, but must "go beyond the pleadings and by
4  [the party's] own affidavits, or by the 'depositions, answers to interrogatories, and
5  admissions on file' designate 'specific facts showing that there is a genuine issue for
6  trial.'" <u>Id.</u> at 324, 106 S. Ct. At 2553 (citation omitted).  The opposing party also may
7  not rely solely on conclusory allegations unsupported by factual data. <u>Taylor v. List</u>,
8  880 F.2d 1040, 1045 (9th Cir. 1989).

9        The court must examine the evidence in the light most favorable to the non-
10 moving party.  <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962).  Any doubt
11 as to the existence of any issue of material fact requires denial of the motion.  <u>Anderson</u>
12 <u>v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).  On a motion for summary judgment,
13 when "'the <u>moving party</u> bears the burden of proof at trial, it must come forward with
14 evidence which would entitle it to a directed verdict if the evidence were
15 uncontroverted at trial.'"  <u>Houghton v. South</u>, 965 F.2d 1532, 1536 (9th Cir. 1992)
16 (emphasis in original) (quoting  <u>International Shortstop, Inc. v. Rally's, Inc.</u>, 939 F.2d
17 1257, 1264-65 (5th Cir. 1991), <u>cert. denied</u>, 502 U.S. 1059 (1992)).

18 **AT&T's Alleged Breach**

19       As a threshold issue, the parties agree that the contractual choice of law provision
20 identifying New York law provides the legal framework for analyzing the claims at
21 issue.

22 <u>AT&T's Alleged Breach</u>

23       WIS contends that AT&T materially breached the contract by failing to provide
24 the requested services and therefore its performance under the MARC is excused.
25 "Under New York law, a party's performance under a contract is excused where the
26 other party has substantially failed to perform its side of the bargain or, synonymously,
27 where that party has committed a material breach."  <u>Merrill Lynch & Co., Inc. v.</u>
28 <u>Allegheny Energy, Inc.</u>, 500 F.3d 711, 186 (2d Cir. 2007).

The court concludes that material questions of fact preclude summary judgment on this claim. The issue of whether the contract was breached, and whether the breach was material, requires review of an extensive record and the weighing of inconclusive evidence. In essence, WIS argues that it and AT&T, at the time of contracting, anticipated the provision of telecommunications services to 70% of the WIS offices, AT&T failed to achieve that percentage of coverage and therefore AT&T breached the contract. (Motion at pp.10:25-11:11). The record reveals that the RFP referenced a 90% coverage. (WIS Exh. 2 at p.7). The record also reveals that the parties discussed and referenced a 70% potential coverage rate, (Stevenson Decl. ¶12), and a 59% coverage rate as well. ( Id. ¶14). Further, while WIS attributes the failure to achieve anticipated revenues to unforeseen difficulties in making adequate connections to AT&T's facilities, AT&T attributes the failure on technical configuration and the lack of cooperation or coordination by WIS. (AT&T SoF. ¶¶19-23). On this evidentiary record the court concludes that a reasonable jury could draw different legitimate inferences from the evidence. As such summary judgment is inappropriate.[1]

WIS further argues that AT&T breached the contract when it failed to renegotiate the MARC after the first year. (Motion at p.11-12-20). The record reveals that the parties did engage in negotiations with respect to the MARC after the first year, ultimately resulting in a waiver of any revenue shortfall. From this evidence it unclear whether the renegotiation provision in Paragraph 7 was breached and, if so, whether that constitutes a material breach. With respect to renegotiating the MARC for the second and third years of the contract, the record reveals that the parties did engage in negotiations, reached a tentative settlement, but ultimately failed to finalize the settlement. Whether this generally described conduct materially breached the renegotiation provision presents genuine issues of material fact. Such issues are better left to the trier of fact.

In sum, the court denies partial summary judgment on this ground.

---

[1] The court notes that WIS's arguments concerning the parole evidence rule appear well-taken.

<u>Rescission of the Contract Based Upon Mutual Mistake</u>

In reliance upon California law, WIS contends that the contract is voidable because of its unilateral mistake "as to AT&T's capability to provide local services," (Motion at p.11:24), and therefore the court should void the contract and grant rescission as a remedy. This argument is not presently persuasive. First, WIS fails to meet its burden of demonstrating there is no legal or factual dispute under New York law, the parties' chosen legal framework for analyzing this claim.

The legal framework is set forth in <u>Creative Waste Management Inc. v. Capitol Environmental Services, Inc.</u>, 429 F.Supp.2d 582, 599 (S.D.N.Y 2006):

> Under New York law, in order for a court to allow rescission of a contract on the basis of unilateral mistake, "a party must establish that (i) he entered into a contract under a mistake of material fact, and that (ii) the other contracting party either knew or should have known that such mistake was being made." <u>Ludwig v. NYNEX Serv. Co.</u>, 838 F.Supp. 769, 795 (S.D.N.Y.1993). If the party establishes a unilateral mistake as to a basic assumption of the contract, a court may "void releases even in the absence of fraud." <u>Middle East Banking Co. v. State St. Bank Int'l</u>, 821 F.2d 897, 906 (2d Cir.1987); <u>see also</u> <u>The Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.</u>, 157 F.3d 933, 939 (2d Cir.1998) ("[A]s a basic proposition, a contract is made voidable by either unilateral or mutual mistake only where the asserted mistake concerns a 'basic assumption on which the contract was made.' ") (citing <u>Restatement (Second) of Contracts</u>, §§ 152-53); <u>Kraft Foods, Inc. v. All These Brand Names, Inc.</u>, 213 F.Supp.2d 326, 330-31 (S.D.N.Y.2002) (Conner, J.).

Here, WIS fails to sufficiently identify undisputed facts that AT&T knew or should have shown about the need for extensive network reconfiguration required to connect to AT&T's communications facilities. Accordingly, the court denies the motion for partial adjudication of the rescission claim.

<u>The Damages Arguments</u>

WIS also moves for partial summary judgment on whether the shortfall damage calculation is properly based on gross or net amounts of the MARC and even whether the shortfall damage calculation is an improper and unenforceable damage penalty. The court declines to reach these damage related arguments on the present motion. Whether or not the damages allegedly suffered by AT&T are readily ascertainable to constitute an impermissible penalty under New York law is not clear from the present record.

"[A] liquidated damages clause . . . will be upheld by a court, unless the liquidated amount is a penalty because it is plainly or grossly disproportionate to the probable loss anticipated when the contract was executed." Wechsler v. Hunt Health Systems, Ltd, 330 F.Supp.2d 383, 413 (S.D.N.Y. 2004). Here, a further development of the record will assist the court and trier of fact in assessing damage-related issues.

The Contractual Statute of Limitations

Lastly, WIS moves to adjudicate AT&T's claim for shortfall damages for the second year of the MARC (September 3, 2004 - September 2, 2005) as time-barred by the contractual two year statute of limitations period. The general rule under New York law is that the "Statute of Limitations begins to run when the right to make the demand for payment is complete, and the plaintiff will not be permitted to prolong the Statute of Limitations simply by refusing to make a demand." State of New York v. City of Binghamton, 421 N.Y.S.2d 950, 952 (N.Y. App.Div. 1979). Section 12.4 of the Master Agreement requires that any legal action must be brought within two years "after the cause of action arises." (WIS Exh. 7, ¶12.4). It is undisputed, based upon the tolling agreement entered into by the parties, that the present action was deemed filed as of February 5, 2008. On February 27, 2006 AT&T submitted a bill for year 2 shortfall in the amount of $135,535.55. As WIS's claim arose on September 2, 2005, the year 2 anniversary date, WIS concludes that AT&T's filing of the complaint on February 5, 2008 bars this claim.

In response, AT&T argues that WIS should be estopped from asserting a statute of limitations defense because the parties entered into settlement discussions, reached a tentative agreement, and then, in early 2006, new management at WIS did not approve the tentative settlement. (AT&T SoF. ¶43-47). AT&T argues that it relied on the tentative settlement and did not timely commence this action in reliance upon the settlement. See Shaffer v. Debbas, 17 Cal.App.4th 33, 43 (1993). The court concludes that whether the general rule applies to bar the year 2 shortfall damages presents genuine issue of material fact whether AT&T reasonably relied on the settlement in

1 delaying the commencement of the present action.

2 In sum, the court denies WIS's motion for summary judgment and, alternatively,
3 for partial summary judgment.

4 **IT IS SO ORDERED.**

5 DATED: September 16, 2009

6
7 Hon. Jeffrey T. Miller
United States District Judge

8 cc:            All parties